IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JUSTIN D. COLEMAN, #216124, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 2:21-cv-320-MHT-SMD |
| | ) |
| ADRIANNA WILLIAMS, et. al., | ) |
| | ) |
| Defendants. | ) |
| | |
| JUSTIN D. COLEMAN, #216124, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 2:21-cv-386-MHT-SMD |
| | ) |
| CHIRSTOPHER GORDY, et. al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  Introduction**

Pro se prisoner Justin D. Coleman ("Coleman") brings this 42 U.S.C. § 1983 action for excessive force against Correctional Officer, Adrianna Williams and Warden, Christopher Gordy.  The instant action was filed on March 26, 2021, and by order, doc. 19, was consolidated with a later-filed action in which Plaintiff named the same Defendants

and raised the same claims.¹ Coleman seeks monetary damages. *Coleman II*, doc. 1 at 5. He does not demand a jury trial in either complaint. *Coleman I and Coleman II*, docs. 1. Coleman alleges that in the early morning hours on December 22, 2020, while he was housed at Staton Correctional Facility, Adrianna Williams verbally assaulted him, and then she and other unnamed correctional officers used excessive force against him when they beat him while he was handcuffed causing injury to his knees, elbows and face. *Coleman II*, Doc. 1 at 3.

Pending before the Court is Gordy and Williams' motion for summary judgment. *Coleman I,* Doc. 31. The undisputed summary judgment record establishes that Williams acted in a good faith effort to maintain discipline when Coleman refused a direct order by her to halt and continued to aggressively advance upon her. Williams responded by spraying mace in Coleman's face, which did not subdue him, and after which he began punching Williams. *See Coleman I,* Doc. 31-6 at 1-2; *Coleman II,* Doc. 1 at 4 where Plaintiff admits "I punched her in her face"². Although Coleman sustained injuries, there is no evidence that Officer Williams acted maliciously and sadistically in order to cause Coleman harm in violation of the Eighth Amendment. Neither does Coleman allege that Warden Gordy participated in any way in the events of December 22, 2020. Coleman has

---

¹ *Coleman v. Williams*, 2:21-cv-320-MHT-SMD is hereinafter designated ("*Coleman* I") and *Coleman v. Gordy,* 2:21-cv-386-MHT-SMD is hereinafter designated ("*Coleman* II"). Plaintiff names the same defendants in each action and raises the same claims.

² Although Coleman claims that he punched Williams in the face "to keep the 3rd Shift Correctional Officers (who responded to the code) constantly physically hitting me and maseing {sic} me while in handcuffs," *Coleman II*, Doc. 1 at 4, he fails to name the 3rd Shift Correctional Officers as Defendants and does not allege that any named Defendant used excessive force against him while handcuffed. *Id.* at 1-5.

failed to show a genuine issue of material fact for trial, and the undersigned RECOMMENDS that Officer William's and Warden Gordy's motion be GRANTED, and JUDGMENT entered in their favor.

## II. Legal Standard

### Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of the plaintiff's claim dictate which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.* "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex*, 477 U.S. at 331 (White, J., concurring).

The court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001). However, a mere scintilla of evidence in support of a claim is insufficient; the nonmovant must produce sufficient evidence to enable a jury to rule in his favor. *Id.* The Eleventh Circuit

3

explains that "[s]imply put, the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotes and citations omitted).

Although factual inferences must be drawn in favor of the non-moving party and pro se pleadings are entitled to a liberal interpretation, a litigant's pro se status does not allow him to escape the essential burden on summary judgment of establishing a genuine dispute concerning a material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). On summary judgment, a pro se plaintiff must still adduce evidence sufficient to establish the essential elements of his claims. *Id.*

### III. Undisputed Facts

Plaintiff claims in the early morning hours of December 22, 2020, he and Officer Williams had an altercation, during which Williams yelled at him and called a code requesting the assistance of unnamed third-shift correctional officers. *Coleman II,* Doc. 1 at 3. He specifically admits that "I punched her {Williams} in the face to keep the 3rd shift correctional officers constantly physically hitting me and maseing {sic} me while in handcuffs". *Id.* at 4. He claims generally that as a result of the Defendant and other officers beating him while he was handcuffed, he sustained injuries including "knees bruised badly that had to be bandage{sic}with being wrap up, elbows bruised, face swole,{sic} face burning from these." *Id*. at 3. Specifically, he claims that his head was

bruised by "3rd shift correctional Officer Lucas[3] on my back while I'm in handcuffs on the ground with my face to the side as he punching me in the upper part of my head where the injuries made at in the photos". *Coleman I,* Doc. 43 at 1.

Defendant Williams' testimony fills in the gaps left by Plaintiff's scant testimony. Indeed, she testifies as follows:

> On the morning of December 22, 2020, I was assigned to F-Dormitory, which is the dormitory where inmate Coleman was assigned. At approximately 5:25 a.m., I was monitoring the inmates departing F-Dormitory for breakfast when inmate Coleman exited F-Dormitory and stood directly in front of me. I ordered inmate Coleman to back away and to proceed in the dining hall. Inmate Coleman began to curse at me and walked away. Inmate Coleman stopped and walked towards me and stated, "I'm going to give you what you're looking for." I ordered inmate Coleman to stop but he did not and continued to approach me with clenched fists. I called for assistance via hand-held radio for assistance. I deployed a burst of Sabre Red chemical agent to the facial area of inmate Coleman, but it did not have any effect on inmate Coleman. Inmate Coleman began to punch me in the face causing bruises to my face. This continued until my assistance arrived. I exited the area to seek medical treatment. I did not use profanity towards inmate Coleman, nor did I administer my Sabre Red spray before inmate Coleman walked toward me.

*Coleman I,* Doc. 31-6 at 1-2. Correctional Officer Ronzella Howard, who is not named as a defendant, likewise, testifies as follows:

> On December 22, 2021, I responded to a code in E and F Dormitory Breezeway. Upon arriving, I observed Basic Correctional Officer Adrianna Williams holding her face and crying. Inmate Justin Coleman BM/216124 was wrestling with Correctional Lieutenant Elrico Briggs. Lieutenant Briggs was ordering Inmate Coleman to stop resisting as he attempted to place Inmate Coleman on the ground. Inmate Coleman and Lieutenant Briggs fell to the ground, inmate Coleman continued resisting by punching, kicking and squirming. Inmate Coleman {sic} behavior was very violent as he resisted being secured in handcuffs. I administered several bursts of "SABRE Red" to Inmate Coleman facial area with negative results.

---

[3] In spite of this specific allegation, Coleman does not name Officer Lucas as a Defendant.

> Inmate Coleman was finally handcuffed and escorted to his feet. Inmate Coleman was not beaten in handcuffs. I gave instructions for the officers to escort Inmate Coleman to the inmate barbershop for decontamination purposes.

*Coleman I,* Doc. 31-4 at 1-3. Correctional Officer, Lieutenant Elrico Briggs, who also is not named as a defendant, testifies in his use of force statement, that on December 22, 2021, when he responded to Defendant Williams' call for assistance, he witnessed the following:

> "inmate Justin Coleman punching Officer Williams in her facial area. I called a "code red" via radio. As I approached inmate Coleman, I ordered him to cease his actions. Inmate Coleman separated from Officer Williams but faced me and assumed a boxing stance. I ordered Inmate Coleman to lie on the ground. He refused to comply with my orders and remained in a boxing stance. I struck inmate Coleman's facial area twice utilizing palm heel strikes. Inmate Coleman attempted to punch me with a left fist but did not hit me. I grasped Inmate Coleman's upper body with both hands attempting to place him on the ground. I was unable to immediately restrain inmate Coleman due to him resisting being placed on the ground. I struggled with inmate Coleman, but I was able to place him chest down on the ground. I gave inmate Coleman several orders to stope resisting and place both hands behind his back to be handcuffed. Inmate Coleman refused and resisted by attempting to lift himself off the ground. Correctional Sergeant Murphy Davis arrived at the scene and assisted me in securing handcuffs on inmate Coleman. All force was ceased on inmate Coleman at that time.

*Coleman I*, Doc. 31-3 at p. 4.

## IV. Discussion

### A. Coleman's Unsworn Statement Cannot be Considered.

Pursuant to the Court's special report procedure, Coleman was given notice that Williams and Gordy's special report could be treated as a motion for summary judgment. *Coleman I,* Doc. 42 at 2. The undersigned advised Coleman that to oppose the motion, he could not rely on his unsworn pleadings and must file "affidavits, sworn/verified

declarations or statements made under penalty of perjury and other evidentiary materials developed through discovery or other appropriate means" that "set forth specific facts demonstrating there is a genuine issue of material fact for trial[.]" *Id.* The order further advised Coleman that "[a]n affidavit is a statement in writing sworn to by the affiant under oath . . . before a notary public or other authorized officer," and that if a notary is not available, Coleman could support his response with "a statement made under penalty of perjury" under 28 U.S.C. § 1746. *Id.* n. 2. The order quoted § 1746 and provided the required language for a declaration that "I declare . . . under penalty of perjury that the foregoing is true and correct." *Id. See generally*, *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985) (explaining notice requirements for pro se litigants).

In *Coleman I*, Coleman filed a three-page handwritten opposition, which contains the required certification. Doc. 43 at 2. Pages 4-5 include affidavits which, however, do not include the required attestations. Doc. 43 at 4-5. Likewise, the complaint filed in *Coleman I* includes factual statements written on a blank paper which is not sworn before a notary. Doc. 1 at 1-3. At the end, Coleman writes "I declare that the following statement is made of my own free will without threat or coercion and is based on personal knowledge of the facts stated above." Doc. 1 at 3. This document is not an affidavit or declaration that may be used to raise a factual issue precluding summary judgment.

In *Coleman II*, the complaint filed on May 28, 2021, is filed on the standard inmate form and contains the "under penalty of perjury" language and is notarized. Doc. 1 at 5. However, the "Grievance Complaint", which is attached to the complaint, contains none

7

of the required attestations. Doc 1-1 at 1-4. Thus, this attachment is likewise not an affidavit or declaration that may be used to raise a factual issue precluding summary judgment.

The Eleventh Circuit's recent opinion in *Roy v. Ivy*, 53 F.4th 1338, 1350 (11th Cir. 2022) controls this issue. In *Roy*, as here, a pro se prisoner presented an unsworn statement labeled as an affidavit in opposition to defendants' motion for summary judgment. *Id.* at 1343, 1350. The Circuit held that in order for the statement to be considered on summary judgment, it must meet the statutory requirements of § 1746. *Id.* at 1348, 1350. Declarant must, at a minimum (1) date and sign the document, (2) state that its contents are true, and (3) place himself under penalty of perjury. *Id.* at 1348, 1350. Because the statement in *Roy* lacked any penalty of perjury language, it could not be considered on summary judgment. *Id.* at 1350 (adopting reasoning in *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-1306 (5th Cir. 1988)). Excusing this omission would allow a plaintiff "'to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *Roy*, 53 F.4th at 1350 (*quoting Nissho-Iwai Am. Corp.*, 845 F.2d at 1306).

Here, as in *Roy*, Coleman's unsworn statements lack any penalty of perjury language, and cannot be considered on summary judgment. *See Coleman I,* Doc. 43 at pp. 4-5 and *Coleman II,* Doc. 1-1. Thus, the court will thus disregard any factual assertions contained in these documents listed above. *Roy*, 53 F.4th at 1350; *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (explaining that unsworn statement is insufficient to raise a fact issue precluding summary judgment).

For the same reasons, the factual allegations in the *Coleman 1* Complaint, Doc. 1, cannot be considered. Specific facts pleaded in a sworn complaint may be considered in opposition to summary judgment. *Caldwell v. Warden FCI Talledega*, 748 F.3d 1090, 1098 (11th Cir. 2014). To be sworn, a complaint must be properly executed under oath before a notary or properly verified under § 1746. *Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018). The handwritten document signed by Coleman states, "I, Declare that the following statement is made of my own free will without threat or coercion and is based on personal knowledge of the facts stated above." *Coleman 1,* Doc. 1 p. 3. The "penalty of perjury" language is the most critical element of § 1746, and its omission means that Coleman's complaint, *see* Coleman *1,* Doc. 1 p. 3, does not substantially comply with the statute. *Roy*, 53 F.4th at 1350. Therefore, it cannot be considered on summary judgment.[4] Thus, the court will look to the *Coleman II* Complaint, Doc.1, and the *Coleman I* Response to the Special Report, Doc. 43 at pp. 1-3 to establish Plaintiff's allegations in this action. Defendants filed an Answer and Special Report denying all claims and attaching supporting affidavits and prison documents addressing Coleman's claims. Doc. 31.

After reviewing the Special Reports and its exhibits, the Court issued an Order requiring Coleman to file a response supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 42. This Order specifically cautioned that, "unless a party files a response in opposition presenting legal cause within

---

[4] Even if Coleman's Complaint in *Coleman I*, doc. 1, and his attachment to the Complaint in *Coleman II*, doc 1-1, could be considered Plaintiff's allegations mostly mirror the ones properly before the court.

9

**fifteen days** from the date of this Order**,** the Court may at any time and **without further notice to the parties** (1) treat the written report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." Doc. 42 at 3.

### B. Respondeat Superior

The Plaintiff makes no specific claims against Defendant Warden Gordy.  Rather, the court understands Plaintiff's claims against Warden Gordy to be premised on respondeat superior based on the alleged actions of Officer Williams.  The law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  Thus, Warden Gordy can be held liable for the alleged actions of Officer Williams if he undertook actions which bear a causal relationship to the purported violation of Plaintiff's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Warden Jones, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] puts [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [the correctional defendant] directed the subordinates to act unlawfully, or knew that

the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).

The record before the court contains no probative evidence to support an inference that Warden Gordy directed Officer Williams or any correctional officer to act unlawfully or knew they would action unlawfully and failed to stop such action. In addition, Plaintiff has presented no evidence of obvious, flagrant, or rampant abuse of him in the face of which Defendant Warden Jones failed to take corrective action. Specifically, Plaintiff does not allege that Warden Gordy was present on December 22, 2020, at the alleged assault or had any personal involvement in the events prior to or following the alleged assault. Accordingly, the court concludes that each of Plaintiff's claims premised upon respondeat superior are due to be dismissed and Defendant Warden Gordy is to be dismissed as a party. The court will now address the sole remaining claim for excessive force against Defendant Officer Williams.

### C. Eighth Amendment Excessive Force

Convicted prisoners' excessive force claims are governed by the Eighth Amendment's cruel and unusual punishments clause. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). A prisoner must show "the unnecessary and wanton infliction of pain" to prevail. *Id.* (internal quotes and citation omitted). Prison guards may use force to keep order, but they must balance the force needed to maintain or restore discipline with the risk of injury to inmates. *Id.* at 6. The Supreme Court recognizes that breaches in discipline may require

11

guards "to act quickly and decisively" without time for careful deliberation and "'the luxury of a second chance.'" *Id.* at 6 (*quoting Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Therefore, prison officials "'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional authority.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-322)

The core judicial inquiry on an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. *See also Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (holding same). Stated another way, could the guard's use of force "plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness" to inflict injury and pain. *Hudson*, 503 U.S. at 6 (internal quotes and citation omitted). In determining whether the use of force was justified or wanton and unnecessary, a court may consider (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the guard, (4) any efforts made to temper the severity of the force, and (5) the extent of injury suffered by the inmate. *Id.* at 7. In the Eleventh Circuit, qualified immunity is not available as a defense to an Eighth Amendment excessive force claim because it requires that force be used "maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (internal quotes and citation omitted).

12

Here, the undisputed facts in the summary judgment record show that when Officer Williams ordered Coleman to report to the dining room; he refused and stood right in from of her. *Coleman I,* Doc. 31-6 at 1-2. Plaintiff became belligerent and aggressively approached Officer Williams; she sprayed him with mace, and he attacked Officer Williams by hitting her in the face multiple times. *Id.* Plaintiff admits that he hit Officer Williams in the face, though he claims it was after he was handcuffed and while Officer Lucas, who is not a defendant, was macing and beating him. *Coleman I,* Doc. 43 at 1.

An inmate assault on a corrections officer is a grave breach of prison discipline that justifies application of force to protect the officer and restore order. Officer Williams defended herself by spraying him with mace, which failed to subdue Plaintiff. Plaintiff does not allege that Defendant Officer Williams beat him while he was handcuffed. (Doc. 44-2). Thus, the court concludes that this was a reasonable response to an inmate assault that Officer Williams could plausibly have thought necessary under the circumstances to defend herself and restore discipline. Moreover, the affidavits of the other officers, who reported to Williams's call for help, demonstrate that Plaintiff continued to resist after he was on the ground and they were trying to cuff him, but that once he was completely restrained their use of all force against him ceased. *Coleman I,* Doc. 31-4 at 1-3; *Coleman I*, Doc. 31-3 at p. 4. These actions all tempered the severity of the force used.

Coleman suffered injury to his knees, elbows and face, *Coleman II*, doc. 1 at 3, but the inmate's injury alone cannot establish an Eighth Amendment violation. *See Hudson*, 503 U.S. at 7; *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (explaining that "[i]njury and force

. . . are only imperfectly correlated, and it is the latter that ultimately counts). Under these circumstances, Officer Williams' use of force against inmate Coleman was made in a good-faith effort to defend herself and restore discipline. There is no evidence in the record that would allow a jury to find that Officer Williams' use of force here was unnecessary and that she acted wantonly, maliciously, and sadistically for the purpose of causing harm to Williams. Accordingly, Williams' Eighth Amendment excessive force claim fails.

V.  CONCLUSION

For the above-stated reasons, the Magistrate Judge RECOMMENDS that Defendant's Special Report filed October 25, 2021 (Doc. 31) be construed as a Motion for Summary Judgment and that Motion (Doc. 31) be GRANTED, and that JUDGMENT be entered in FAVOR OF DEFENDANTS on all claims. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before June 25, 2024. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-

1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    DONE this 11th day of June, 2024.

/s/ Stephen M. Doyle

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE